Good morning, Your Honors. I represent Carlos Estevez, and while we do raise some evidentiary issues, I want to touch, focus initially on the sentencing issue because I believe that regardless of how the Court determines the evidentiary issues, at a minimum, Mr. Estevez should get a resentencing. The issue in this case was the judgment of finding that Mr. Estevez was responsible for 30 kilograms of heroin. We start with Mr. Estevez's testimony, with Mr. Ortiz's testimony that it was about 30 kilograms. Now, about 30 kilograms, if it was 29.99, that would meet a lower sentencing guideline. And other places he testified at 608 of the record that his estimate or his guess was an estimate, not a right amount because I don't remember the right amount. So that's How could we conclude, though, that the district court would, even if the district court was wrong about the 30 kilograms and should have had a lower range, how could we possibly conclude the sentence would have been lower? Your Honor At the mandatory minimum of 10 years and 6 months. And it's clear from the transcript of the sentencing that the extra 6 months seems to be for his role. How could we conclude that the district court would give him 10 years and 4 months or 10 years and 2 months if we sent it back? Your Honor, after Booker, the starting point is always the guidelines. And if this Court has held on a number of occasions that if there's an error in the guideline calculation, regardless of whether the district court may have done or departed for other reasons, there's an error. That's an error that requires resentencing that has to be sent back. Because What about the error, though? Ortiz did say the 30, right? He said about 30. About 30. About 30. And that's all that they have. Now, the question is, he also said, and, you know, we quote in our brief at 1011, the district court went on for several pages, you know, trying to support that estimate. But if you — and we go through in our brief very detailed why none of that is sufficient. For example, the Court said the first factor said that there were multiple trips. You know, there were multiple trips. That doesn't really tell you anything about how much was transported. Nobody disputes that if he was working on behalf of Carlos Estevez, that there were multiple trips. But he also testified that the most he transported from Mr. Estevez is 1 kilo. So the multiple trips doesn't do it. The district court then says, oh, well, we have Fernando's testimony — we have the 10 blocks or 10 kilos. That — well, actually, at the time of his arrest, what Ortiz said is he admitted on course examination that the most that he took was 3 kilograms. So you can't — the district court couldn't rely on that testimony. Then the district court said, oh, well, I recognize that there was — you know, the arrangement between Carlos and between Fernando's was different. It wasn't just simply different. It was no indication that it was — he — for that half the — half the price, he was agreeing to transport less. Well, even — even Ortiz's testimony recognizes as much that he was agreeing to transport less, because he says that in a period — a longer period, he transported 30 kilograms versus the possible 50 that he says for Fernando's. The district court — the third factor the district court says is, again, it's not unreasonable when compared to Fernando. But Ortiz did say he made multiple trips, right? Ortiz, yes. He said — and this is — It wasn't just that one kilogram. It — no, there's no dispute that there's one kilogram. But he also said — and this is, I think, what the Court has to keep in mind. We're talking about, at most, a period of 7 months. 30 kilograms in 7 months, it may be less, because he says he started in the early summer, and there's no dispute that he ended at the end of December. So that's a period of 7 months. That would mean 4 and a quarter kilograms per month. He says that some months, and — he only made one trip. And he also says, when he asked how much did you transport, well, sometimes it was a quarter, sometimes it was a half, and sometimes it was a kilo. The math just doesn't add up. And the Court said — you know, the Court says, well, let's look at the December. We know that, at that point, he transported a kilogram. And — but that doesn't mean that his estimate on the other occasions, that he didn't transport more. Well, it does, because if you look at Ortiz's testimony, he said, when he was asked, how much did you — this is at A600 — how much did you transport on behalf of Carlos? And he says, a quarter, a half, and a kilo. So the kilo was the most amount. So I just — you know, it's not — yes, you can use estimates, but when you're dealing — the courts have recognized that the estimates have to be based on something. And here it's just — he threw out a number. Even as to Fernando, he acknowledged at the time of his arrest that it could have been 40 to 50. The other thing is, when you look at Fernando's, because this is what Fernando's — this is what the district court relied on, he says, how much money did you collect on behalf of Fernando? A million dollars. Well, the trial testimony is that a kilo of heroin was $50,000. That equates to 20 kilos. So even as to Fernando's, which the district court relied on, his math doesn't add up. So you have testimony that could be — on behalf of Fernando's, he transported only 20. You have at the time, in his own plea agreement, the amount of drugs that he was responsible was between 3 and 10. Based on the entirety of the record, I think this Court can clear — conclude very clearly that there was clear error in terms of the sentencing. And I think the law is clear in the circuit that if there was error, it has to be remanded. Yes, it may be that the judge may give the same sentence on remand. I don't believe he will if — when we're starting with a lower point. And six months is still six months. Just turning briefly to the evidentiary issues, I recognize it's a high hurdle of the two leading questions, but this is not a situation where there were one of two leading questions. This — the testimony from the two main witnesses was infected with leading questions. I agree there was no objection. It's beyond me why there was no objection because I have no doubt that had there been objection, the judge would have sustained the objection. And, yes, the government could have elicited this testimony. I take it from that that you were not the trial counsel. No, I was not. Had — had the government — the government could have tried to elicit this testimony through non-leading questions, there's a question whether they would have gotten the same answers. Indeed, if they would have gotten the same answers, the question — you have to ask yourself, why did the government use the resort to leading questions? And you combine that error with the preserved issue of violating Estevez's confrontation rights of restricting him from conducting recourse. I think the cumulative nature of the error warrants — permits this Court to conclude that he was deprived of a fair trial. The — by restricting him from cross-examining on the issue of the nature and the sufficiency of the government search, you know, the way the government corroborated the agent's testimony, Cameron's testimony, was, look, we know that he — that this is the 2 kilos that he saw, because, look, we only recovered 2 kilos. But his argument was — or it is made a — you know, told his girlfriend at the time or the rest, they got me with 5. He wanted to explain, oh, they got me with 5 cars. I mean, to me, a nonsensical — You challenged Cameron's testimony on that, right? I'm sorry? You challenged Cameron's testimony on that, right? On that being — The 5 is inconsistent with just — Well, we attempted to, but we were — we were — we were prevented from doing that. Right. You didn't get a recourse on that, right? Not just we didn't get a recourse. We couldn't get even a direct. But then when we tried to follow up on the nature of the search on recourse, we couldn't get that recourse. My question is, Cameron didn't do the search. It was the Connecticut State trooper that pulled him over and found the 2 bricks. He was at the — he was at the search.  No, no — He didn't search the car, did he? He was — my recollection of the testimony is he was there at the search. He approached the agents. He was — It was after the troopers had found the 2 bricks and they searched the car, and they didn't see anything else in the car. But he would have been — I believe he would have been able to be — have been questioned about the nature of the search. He was watching the search to see how — Is there any evidence that — no, he arrived after they searched and found the 2 bricks, right? I'd have to go back and look at the record. My record — He never said he searched the car himself, did he? On direct? No. It was the troopers who did it? It was the troopers there. My recollection is he was there — he was there at the time the car was pulled over. But I'll — So how could it possibly be, if he did get the — or your predecessor got the recross, that the answer would have been other than — other than, I didn't do the search of the car, I can't tell you what the 5 means, I don't know. All I know is when I got there, the searchers — the troopers had found the 2 bricks. How could it be anything other than that? I — I believe he would have been able to testify how extensive the search was. But I'll confirm that. And you've reserved two minutes for rebuttal, Mr. Yorowitz. Mr. Stone. Good afternoon, Your Honors. My name is Jeff Stone. I'm an assistant U.S. attorney from the District of Connecticut. The district court's judgment should be affirmed for several reasons. First, addressing the sentencing issue. The district court found by a preponderance of the evidence that the defendant's relevant quantity was approximately 30 kilograms of heroin. He based this finding on specific evidence in the record, principally on the testimony of Josue Ortiz. He found that Mr. Ortiz's testimony was credible, that his testimony overall was consistent with much of the other evidence that was presented to the jury, and ultimately determined by a preponderance of the evidence that Mr. Estevez's relevant quantity was between 30 and 90 kilograms of heroin. Based on that, he made an appropriate calculation of the guideline range and ultimately imposed a sentence of 126 months of imprisonment. It took a lot of math to get there, though, right? It did take a little bit of math. Because he was only caught with the two bricks for 1 kilogram. So to get it up to 30, there were some mathematical gymnastics performed. Weren't there for a 7-month period? That might be one characterization, Your Honor, although I will say that Josue Ortiz did estimate on the stand that he had transported 30 kilograms for Carlos Estevez. So I think that was the starting point. And then when Judge Shea went through the approximately 7-month period about what was happening based on the evidence that was elicited at trial, he looked at that evidence to find either support for Josue Ortiz's estimation or not support. In this case, he found support. He basically found that there was a course of dealing that remained consistent. It started with Fernando Estevez and continued with Carlos Estevez, where Josue Ortiz was transporting kilogram quantities of heroin, typically multiple times a month, from New York to Connecticut. Josue Ortiz said generally he was transporting between 1 and 3 kilograms, although he recalled that there were occasions where he transported as much as 10 bricks. And he understood that a brick to be a kilogram of heroin. Based on that testimony and the other corroborating evidence that Judge Shea went through during the sentencing proceedings, he determined that that estimation by Josue Ortiz was credible. He credited that testimony. He made a finding. And he ultimately calculated the guideline range based on that. With regards to the evidentiary issues, first with regards to TFO Cameron's participation in the motor vehicle stop that led to the seizure of the kilogram of heroin, I believe Your Honor is right, that TFO Cameron was not on scene when they made the initial stop and conducted the search of the car, but rather he was some distance away and watching it with the aid of binoculars. And then after the seizure was made, TFO Cameron came to the scene, observed the evidence that was seized from Ortiz's truck, testified at length at trial about what he observed, both on direct examination and in cross-examination, and ultimately testified about what he did with that evidence subsequently. Namely, he took custody of it, sent it to the laboratory, testified that when he took custody of it from the State, it still looked similar to how it looked on the day it was seized, and ultimately it ended up being a little bit over a kilogram of heroin. With regards to the leading questions issue, the initial comment I have, Your Honors, is that Rule 611 provides district court with broad discretion in overseeing the mode of the presentation of evidence. Here, we have no objections were made to the questions. There's no claim that the questions resulted in inadmissible evidence. And significant portions of the challenged testimony was elicited through other testimony by these witnesses. As a result, the government submits that the defendant cannot show the first two prongs of the plain error test. But even assuming that the defendant could show the first two prongs of the plain error test, he can't establish the second two prongs. He cannot show prejudice. As outlined in pages 27 through 34 of the government's brief, the evidence against Carlos Estevez was overwhelming. There were the events of December 31st, 2013 and the seizure of the kilogram of heroin. The testimony of Josue Ortiz about his dealings with Carlos Estevez for over a seven month period. The observations of TFO Cameron and his testimony at trial. The evidence that was- Why was there so much leading, though, of the cooperating witness? Was there something in particular about this witness? It seems like there was a lot of leading, and maybe that's not a problem. I don't know yet, but it seems like a lot of leading questions, though. Is there something about this witness? Usually, it's, you know, if someone's having a hard time explaining or if someone's not, can't speak English very well, there might be some leading permitted by the court, but there did seem to be a lot of leading here. Is there an explanation for that? Your Honor, the witness did not speak English very well, but there were leading questions. And with the benefit of looking over the trial transcripts, I was the prosecutor on that case and I examined Mr. Ortiz. Looking at the trial transcript, I realized that I could have asked much better questions and probably should have done it in a more artful manner. That being said, as articulated in our brief, Your Honor, government submits that even with those leading questions, there's not error here, much less plain error, particularly given the overwhelming evidence regarding not only Carlos Estevez's distribution of a kilogram of heroin on December 31st, 2013, but his leadership role within this drug trafficking organization that was importing into Connecticut and distributing within Connecticut enormous quantities of heroin. Based on that, the government submits that the defendant cannot meet his burden to show that there was plain error as a result of the leading questions that happened during the course of the trial. Accordingly, the government submits that the defendant has not shown reversible error either on the evidentiary issues or with regards to the sentencing determination. As a result, the government submits that the judgment below should be affirmed. Thank you. Thank you, Mr. Stone. Mr. Urowitz. Two points. One is just the government is correct, Your Honor is correct, that he was not there at the search. The problem is the testimony was the question that was asked on redirect, this is at 8339, were those two packages the only drugs that were found in the truck? Answer, yes. On recourse, the defense counsel would have been able to explore what was the basis for that testimony, meaning that precisely because he wasn't there, he didn't know the adequacy of the search. And that's what he was prohibited from doing. Now, without that cross-examination, we're just left with the bold testimony on the record that all that was found were the two kilos. So walk me through what redirect, re-redirect would have looked like. Mr. Cameron, your question, you testified on redirect, were those two packages the only drugs that were found in the truck? Answer, yes. Mr. Cameron, is my understanding correct that you were not at the scene of the time of the car at the time that this search was conducted? Answer, yes. Do you know about the adequacy of the search that was done? Answer, no. Do you know whether there could have been other drugs in the car? Answer, no. Are you aware of the fact that at the time that he was stopped, he said, I was caught with five? You may be aware of that. Well, do you know whether there were five kilos in the car and that those weren't recovered? Those all would be a line of questioning that defense counsel should have been permitted to ask, which he was not permitted to ask. And that would have resulted in what? The defense at trial was that Ortiz was a drug dealer and, you know, that he had his own business going on, that all the observations of him delivering drugs, picking up money was on his own behalf. Nothing to do with our client. That's one thing that would go to that point. But the other point that it would go to is Cameron's testimony was, we know that I saw him exchange two kilos. And look, when we conducted a search, there were only two kilos that were found. Our argument was if there would have been evidence or an inference that there were, in fact, five kilos, it would have undermined Cameron's testimony, for which there was no other corroboration. He had no pictures. He had no nothing to corroborate. Just one other point. My adversary said that a brick is one kilo. The evidence at trial, even on December 31st, what was picked up were two bricks. So the bricks were half a kilo. And Ortiz's testimony says when he delivered a quarter of a kilo, the bricks were a quarter of a kilo. So you can't — there's no extrapolation that could be made from the size of the bricks. The only thing that could be made is we have testimony that sometimes he did a quarter, sometimes a half, and sometimes a kilo, at most a kilo. And if you just do the math, it doesn't add up. Thank you.